UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
|     *Appellant* | : | NO. 22-3038 |
| | : | |
| v. | : | |
| | : | |
| JOSEPH W. FISCHER, | : | |
|     *Appellee* | : | |

**MOTION OF APPELLEE, JOSEPH W. FISCHER, BASED ON APPELLATE RULE 41, TO STAY MANDATE PENDING FINAL DISPOSITION BY THE UNITED STATES SUPREME COURT**

Appellee, Joseph W. Fischer, by counsel, moves to stay this Court's mandate under Appellate Procedural Rule 41(d)(1) pending the petition for a writ of certiorari in the United States Supreme Court. In support, Mr. Fischer asserts that his request establishes the requisite substantial question and good cause necessary under the Rule based on the following:

**I.   Background**

**A.   The district court proceedings**

The government indicted Mr. Fisher for his role in the January 6th demonstrations at the Capitol building. The charges included an offense under Section 1512(c) of the Victim, Witness, or Informant Tampering statute, 18 U.S.C. § 1512, which Congress enacted to

criminalize the obstruction of its legislative inquiries and investigations. Section 1512(c) criminalizes evidence-impairment crimes in connection with, among other things, "a proceeding before the Congress." Before trial, Mr. Fischer moved to dismiss the obstruction count. He argued that his conduct fell outside the purview of Section 1512(c). *See United States v. Fischer*, 64 F.4th 329, 333-34 (D.C. Cir. 2023).

The district court agreed. The court found that the text of Section 1512(c) supported three possible readings, but only two of them were plausible. *United States v. Miller*, 589 F. Supp. 3d 60, 67 (D.D.C. 2022). In this regard, the court observed that subsection (c)(2) could be read as either prohibiting any act that obstructs an official proceeding or as a residual clause, reaching only acts like ones listed in (c)(1). *See id.* at 67-72. Given the text, structure, historical background, and legislative history of Section 1512, as well as the rule of lenity, the court found that the latter reading applied. *See id.* at 66, 72-76. The court thus held that Mr. Fischer's acts fell outside the reach of Section 1512(c)(2).

The government appealed. And the district court informally stayed its proceedings pending the government's appeal.

### B. The appeal

This Court—in a deeply divided set of opinions—reversed. In the lead opinion, Judge Pan conceded that there was no precedent for applying Section 1512(c) to the conduct unrelated to evidence impairment at issue, and that such application was beyond Congress' expressed purpose in amending that section. *See Fischer,* 64 F.4th at 339, 346-47. Yet Judge Pan viewed the terms in Section 1512(c)(2) to be clear, unambiguous, and supporting a broad reading. *See id*. at 336. Consistent with this view, Judge Pan declined to find any inconsistency with the statutory context, historical development, and legislative history. *See id*. at 343-50. And absent a "grievous ambiguity," Judge Pan did not believe the rule of lenity had any role to play. *See id*. at 350.

As to the government's argument that the mens rea of "corruptly" limited the statutory reach, Judge Pan demurred. *See id*. at 340. At the outset, she observed that the district court declined to interpret corruptly, the parties only discussed this issue "peripherally," and no one requested the standard adopted by Judge Walker's concurrence. *See id*. 340-41. For those reasons and because the assault allegations, in her view, satisfied *any* mens rea standard, Judge Pan did not reach

3

the issue. And she offered that the definition adopted in Judge Walker's concurrence should, for the same reasons, await briefing in a different case. *See id.* at 341.

Judge Walker concurred in the judgment. *See id.* at 350, 362. In his assessment, the lead opinion's rationale was "not enough to uphold the indictments" because it declined to define Section 1512(c)'s mens rea element. *See id.* at 362 n.10. Judge Walker repeatedly characterized the government's construction of Section 1512(c)(2)'s act and mental state as breathtaking in scope, subjecting it to vagueness and overbreadth concerns. *See id.* at 351-52, 356, 358, 360, 361. On this point, Judge Walker's views aligned with those of Judge Katsas' dissent. But Judge Walker differed with the dissent on the best way to address those problems. In Judge Walker's judgment, the most efficient way to narrow the breathtaking scope resulting from the lead opinion's construction was through the mens rea element—corruptly. *See id.* at 351, 356, 357-61.

For his part, Judge Katsas concluded that both the government and lead opinion dubiously read the term "otherwise" in Section 1512(c)(2) to mean in a different manner, as opposed to in a manner like the list in subsection (c)(1). *See id.* at 363. Such reading, Judge Katsas

4

explained, rendered subsection (c)(1) ineffective. *See id*. And it made 1512(c) implausibly broad and unconstitutional in many applications. *See id*.

As Judge Katsas observed, the meaning of "otherwise" in subsection (c)(2) cannot be determined in isolation but must be drawn from the context in which it's used. *Id*. at 365. To begin, Judge Katsas relied on normal linguistic usage that the verbs preceding "otherwise" help frame and narrow its meaning. *Id*. This usage dovetails with textualism's goal, that is, not to explore definitional possibilities but to assess how an ordinary person would understand the phrases Congress strung together. *Id*. at 366.

This goal also coincides with several canons of construction. Those canons include avoiding surplusage by giving effect to every clause and word. *Id*. at 366-67. Another canon, *ejusdem generis*, cautions that when general words follow specific ones, the general words are construed as embracing only objects like those enumerated. *Id*. at 366-67, 374-75. Similarly, the canon of *nocitur a sociis* provides that "a word is given precise content by the neighboring words with which it is associated." *Id*. (citations omitted). Here, "otherwise" takes meaning from the specific examples preceding it. *Id*. As Judge Katsas

5

recognized, the expansive interpretation by the government and the lead opinion "would swallow up various other Chapter 73 offenses outside of Section 1512." *Id.* at 372-73.

Judge Katsas next noted that the statutory history surrounding Section 1512 and its application in the courts went against the lead opinion's unprecedented expansion of its reach. *See id.* at 376-77. Given the ambiguity surrounding the statutory reach and unconstitutional breadth, Judge Katsas believed that the rule of lenity applied. *See id.* at 371, 382-83.

Finally, as for the approach suggested in the concurrence, Judge Katsas lauded the goal of narrowing the government and lead opinion's breathtaking and untenable construction of the statute. *See id.* at 381. But in Judge Katsas' view, the heightened mens rea requirement that the concurrence proposed would not alter the improbable breadth of the actus rei. *See id.* at 381-82. In other words, Judge Katsas viewed the unlawful-benefit mens rea definition as necessary but not sufficient.

II.   **Mr. Fischer's petition for a writ of certiorari satisfies the "substantial question" and "good cause" requisites to stay the mandate.**

To obtain a stay of the mandate pending the filing of a petition for writ of certiorari in the Supreme Court, a party "must show that the

6

petition would present a substantial question and that there is good cause for a stay." FED. R. APP. P. 41(d)(1). The Supreme Court's review standards help frame that inquiry. And they provide, among other things, that a compelling reason for Supreme Court review occurs when a court of appeals decides an important question of federal law that has not been, but should be, settled by the Supreme Court. SUP. CT. R. 10(c). Review is also warranted when a court of appeals decides an important federal question in a way that conflicts with the relevant decisions of the Supreme Court. *See id.* Both standards are implicated here.

### A. Mr. Fischer's appeal presents an important issue of federal law.

In Mr. Fischer's case, the scope of Section 1512(c) and whether it encompasses conduct outside evidence impairment affects hundreds of prosecutions from the January 6 riot at the United State's Capitol. *See generally* [28 Months Since the Jan. 6 Attack on the Capitol (justice.gov)](); [Capitol Breach Cases | USAO-DC | Department of Justice](). And the application of Section 1512(c) outside cases involving evidence impairment is unprecedented. *See Fischer*, 64 F.4th at 339 (conceding that "outside the January 6 cases . . . there is no precedent for using § 1512(c)(2) to prosecute the type of conduct at issue in this case").

7

Indeed, the deeply divided opinions in *Fischer* over the proper scope of Section 1512(c) evidence the uncharted application of the statute. *Compare Fischer*, 64 F.4th at 336 (Pan, J., viewing the language as unambiguous) *with Fischer*, 64 F.4th at 351-52, 358, 360-61 (Walker, J., concurring and characterizing Section 1512(c)(2) as vague and breathtakingly broad absent a restrictive mens rea) *with Fischer*, 64 F.4th at 363 (Katsas, J., dissenting and describing Section 1512(c) as "implausibly broad and unconstitutional in a significant number of its applications" absent a narrowing of the actus rei). Even among the district court judges who upheld a broad reading of Section 1512(c), they divided over the reasons for doing so. *See* App. 398 n.1.

Moreover, many concerns expressed by Judge Katsas in his dissent over the unconstitutional consequences of giving a broad reading to a statute, *see Fischer*, 64 F.4th 378-79, are now being realized. For example, Senator Cotton has begun probing why Justice Department officials have not launched criminal investigations under Section 1512(c)(2) for those protesting gun violence at the Tennessee Capitol and those protesting Representative Jordan's House Judiciary Committee hearing in New York City. *See* Tristan Justice, *Tom Cotton Confronts Deputy Attorney General Over DOJ Double Standards*, The

8

Federalist (April 19, 2023); Forbes Breaking News, *Tom Cotton Asks Deputy AG If DOJ Will Investigate 'Democratic Mob' Disrupting Tennessee Legislature*, YouTube (Apr. 19, 2023), https://www.youtube.com/watch?v=DAQ1g5hC824&t=159s.

The proper scope of Section 1512(c) thus presents an important issue, affecting hundreds of prosecutions and implicating the extension of criminal responsibility to constitutionally protected conduct.

### B. The Panel's decision conflicts with circuit and Supreme Court precedent.

As more fully developed in the Appellees' brief, *see* (Brief of Appellees at 37-40), the Panel's decision diverges from this Court's understanding of Section 1512 in *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991). And the Panel's construction of the term "otherwise" conflicts with the Supreme Court's interpretation of that term in a similar residual clause. *Cf. Begay v. United States*, 553 U.S. 137, 142-43 (2008). Likewise, other circuits have interpreted the term consistent with *Begay*. *E.g., United States v. Brooks*, 610 F.3d 1186, 1200-01 (9th Cir. 2010) (construing "otherwise" in the Sentencing Guidelines as relating to the examples in the preceding subsection).

Finally, as Judge Katsas recognized, the Panel's broad interpretation of Section 1512(c)(2) has been repeatedly rejected by the

9

Supreme Court in other statutory contexts. *See Fischer*, 64 F.4th at 378 (citing *Bond v. United States*, 572 U.S. 844, 860 (2014); *Van Bruen v. United States*, 141 S. Ct. 1648, 1661 (2021)). Mr. Fischer's issue thus satisfies the Supreme Court's review standards.

### C. Good cause exists for a stay.

As noted, the district court informally stayed Mr. Fischer's case while the government appealed. And the government posed no objection to it. Absent a stay, Mr. Fischer will face trial on the felony Section1512(c)(2) obstruction charge, which carries a 20-year statutory maximum. This is not a situation in which a stay of the mandate will delay execution of the judgment of sentence. More important, the disposition of the obstruction count will have a significant effect of the calculation of the sentencing guideline range.

Staying the mandate will merely maintain the status quo. Certiorari briefing will be completed over the summer and the Supreme Court will likely rule on the petition no later than October. If certiorari is denied, the stay would last less than six months. And if certiorari is granted, Mr. Fischer's case would be heard and decided by the summer of 2024.

For these reasons, the Appellee, Joseph W. Fischer, respectfully requests that this Court grant this motion to stay the mandate pending final disposition by the United States Supreme Court.

                                                          Respectfully submitted,

Date: May 26, 2023              */s/ Frederick W. Ulrich*
                                                        FREDERICK W. ULRICH, ESQ.
Asst. Federal Public Defender
Attorney ID# PA44855
AMANDA R. GAYNOR, ESQ.
Staff Attorney
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
Tel. No. 717-782-2237
Fax No. 717-782-3881
*fritz_ulrich@fd.org*
*Counsel for Appellee*

## CERTIFICATE OF PARTIES

I hereby certify, under Fed. R. App. P. 32(g) and Fed. R. App. P. 27(d)(2)(A), that the foregoing Motion to Stay Mandate was prepared in Century Schoolbook 14-point font and contains 1,941 words.

*/s/ Frederick W. Ulrich*
FREDERICK W. ULRICH, ESQ.
Asst. Federal Public Defender

Date:  May 26, 2023

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing Motion to Stay Mandate with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system on May 26, 2023, James I. Pearce, U.S. Department of Justice, counsel for appellant, james.pearce@usdoj.gov, who is a registered CM/ECF user, will be served by the appellate CM/ECF system.

*/s/ Frederick W. Ulrich*
FREDERICK W. ULRICH
Asst. Federal Public Defender