United States Court of Appeals
For the District of Columbia Circuit

| | | |
|---|---|---|
| United States of America, | : | |
|     *Appellant* | : | No. 22-3041 |
| | : | |
| v. | : | |
| | : | |
| Garret Miller, | : | |
|     *Appellee* | : | |

**Appellee's Reply to Appellant's Opposition to Motion to Stay the Mandate**

Appellee, Garret Miller, by counsel, submits the following reply to the Government's response in opposition to a stay of this Court's mandate.

## I. This appeal involves substantial and important issues of federal law.

In its response, the government raises three arguments that, in its view, reflect the lack of a "substantial question." None has any merit.

First, it maintains that Miller "cannot identify an important question of federal law that has divided . . . federal courts." Doc. 2002500 at 5. But one need not look beyond the Panel's opinion to see that this is not true. The scope of 18 U.S.C. § 1512(c) deeply divided the Panel. *See United States v. Fischer*, 64 F.4th 329, 340-41 &n.1, 350 n.8,

362 n.10, 363, 370 (D.C. Cir. 2023). And it divided the district court judges addressing the issue. *Cf., e.g.*, *United States v. Fischer*, 605 F. Supp. 3d 63, 66 & n.1 (D.D.C. 2022) (collecting cases). Just as important, that the Panel issued a precedential opinion in *Fischer*—despite the deep divisions—reflects the substantial nature of the legal issues. Indeed, the Circuit's Local Rule governing opinions states that the decision to publish one reflects, for instance, that it addresses a "substantial issue." *See* D.C. CIR. R. 36(c)(2)(A).

Second, the point the government attempts to make on a "substantial question," that is, whether it has divided the courts, fails to acknowledge the other parts of the relevant standard. To be sure, under subsection (a) of Supreme Court Rule 10, a substantial question warranting certiorari may exist when the United States Courts of Appeal have issued conflicting decisions on a particular issue. *See* SUP. CT. R. 10(a). But the standards for granting certiorari also include, among others, subsection (c). There, certiorari may be granted when a court of appeal "has decided an important question of federal law that has not been, but should be, settled by [the Supreme] Court." Sup. Ct. R. 10(c). Certiorari is also appropriate when a court of appeal has

2

"decided an important federal question in a way that conflicts with the relevant decisions of [the Supreme] Court." *Id.*

As to the initial standard under this subsection, the government cannot dispute that the application of Section 1512(c) beyond the evidence impairment context represents an unprecedented extension of the statute. Judge Pan acknowledged as much. *See Fischer*, 64 F.4th at 339 (Pan, J.). And the government implicitly concedes that this novel expansion of criminal responsibility under Section 1512(c) affects hundreds of individuals and prosecutions.

On the second part of Rule 10(c), the lead opinion's application of Section 1512(c) conflicts with or, at a minimum, deviates from the decisions from the Supreme Court. The government contends that this part of the standard is not satisfied because the district court and Miller relied, in part, on *Begay v. United States*, 553 U.S. 137 (2008). See Doc. 2002500 at 7. In the government's view, *Begay* is irrelevant "because it interpreted a statute with a very different structure." *Id.* But that's simply an argument for distinguishing *Begay*. And as Miller noted previously, other courts have followed *Begay* when interpreting similar language in different provisions. *E.g.*, *United States v. Brooks*, 610 F.3d

3

1186, 1200-01 (9th Cir. 2010). As important, Judge Katsas emphasized that, in other statutory contexts, the Supreme Court has repeatedly rejected the Lead opinion's broad interpretation of criminal responsibility that reaches either innocent or previously unregulated conduct. *See Fischer*, 64 F.4th at 378. (Katsas, J. dissenting) (collecting cases).

Even if one ignores Judge Katsas' recitation of Supreme Court decisions contradicting a broad reading of criminal statute like Section 1512(c), the Court recently addressed the very arguments made by the Appellees. In *Dubin v. United States*, No. 22-10, slip op. at 1 (U.S. June 8, 2023), the Court construed the breadth of the Aggravated Identity Theft statute, 18 U.S.C. § 1028A(a)(1). There, as Appellees argued here, the Court stressed that the words of a statute cannot be read in isolation. *See id*. at 12. Rather, the Court employed the canon "that a word is known by the company it keeps," *noscitur a sociis*. *Id*. In so doing, the Court emphasized that courts must "exercise restraint in assessing the reach of a federal criminal statute." *Id*. at 17.

Finally, the government offers that an opinion in a different appeal, *e.g.*, *United States v. Robertson*, No. 3062 (D.C. Cir.) may clarify

4

the mens rea element in 18 U.S.C. § 1512(c), and if it does, Miller can then re-raise his issue over the actus rei after trial. *See* Doc. 2002500 at 7-8. This argument makes no sense. The decision of the Panel constitutes the law of the case. *See LaShawn A., et al., v. Barry, et al.*, 87 F.3d 1389, 1393 (D.C. Cir. 1996).[1]

In sum, the legal issues in this appeal are substantial and satisfy the Supreme Court's review criteria.

## II. Miller's circumstances present "good cause" for a stay.

As for good cause, the government claims that Miller cannot show that he would be harmed by the reactivation of proceedings in the district court. In support, the government makes two arguments.

First, the government argues that "the speculative possibility of a higher potential sentence upon conviction [under Section 1512(c)(2)] . . . does not constitute a substantial harm that counsels in favor of a stay." Doc. 2002500 at 10. But the government is not a disinterested

---

[1] If the government is suggesting that the Supreme Court may be able to address the issue in *Fisher* after trial and following a direct appeal, that argument is, to say the least, speculative. In any event, a trial will not alter the legal issue over the scope of Section 1512(c).

speculator; it is positively arguing in the district court for (a) a trial on the Section 1512(c)(2) charge notwithstanding Miller's convictions on other charges and (b) a higher sentence upon Miller's future conviction under Section 1512(c)(2), an outcome that the government says is likely—not speculative. *United States v. Miller*, 21-cr-119-CJN (D.D.C. 2021), ECF No. 141, p. 46 ("A conviction on [the Section 1512(c)(2)] count would likely . . . result[] in a higher Sentencing Guidelines range" for Miller). That is because, among other things, the district court routinely applies eleven levels of sentencing enhancements to Section 1512(c)(2) convictions in the January 6 context. *See* U.S. SENT'G GUIDELINES MANUAL §§ 2J1.2(b)(1)(B), (b)(2) (U.S. Sent'g Comm'n 2021).

Second, the government contends that "nothing precludes [Miller] from seeking a stay of any further proceedings in the district court" should the Supreme Court grant a certiorari petition. Doc. 2002500 at 10. That omits two things. The government proceeded to trial against Miller on the other counts, he ultimately pleaded guilty, and the district court sentenced him. *See United States v. Miller*, No. 1:21-CR-00119 at Doc's. 138 & 147 (guilty plea transcript and judgment). And if the government realistically expects that the district court will stay Miller's

6

(second) trial this time around or schedule it so far out that the issue is moot, then why is it opposing a stay of the mandate here?

### III. Conclusion

For these reasons, the Appellee, Garret Miller, requests that this Court grant his motion to stay the mandate pending final disposition by the United States Supreme Court.

Respectfully submitted,

Date: June 9, 2023

*/s/ Nicholas D. Smith*
Nicholas D. Smith (D.C. Bar No.1029802)
1123 Broadway
Suite 909
New York, NY 10010
Phone: (917) 902-3869
nds@davidbsmithpllc.com

F. Clinton Broden
Broden & Mickelsen
2600 State Street
Dallas, TX 75204
Direct: 214-720-9552
Email: clint@texascrimlaw.com
Fax: 214-720-9594

*Counsel for Appellee*

## CERTIFICATE OF PARTIES

I hereby certify, under FED. R'S. APP. P. 32(g) and 27(d)(2)(A), that the foregoing Reply to Opposition to Motion to Stay Mandate was prepared in Century Schoolbook 14-point font and contains 1200 words.

<u>/s/ Nicholas D. Smith</u>

Date:  June 9, 2023

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing Reply to Appellant's Opposition to Appellee's Motion to Stay Mandate with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system on June 9, 2023, James I. Pearce, U.S. Department of Justice, counsel for appellant, james.pearce@usdoj.gov, who is a registered CM/ECF user, will be served by the appellate CM/ECF system.

*/s/ Nicholas D. Smith*